IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KAYLA BASSETT**, an individual<br><br>       Plaintiff,<br><br>    v.<br><br>**TRUVETA, INC.**, a foreign business corporation,<br><br>       Defendant. | Case No. 3:24-cv-1885-SI<br><br>**OPINION AND ORDER** |

Ashley A. Marton and Rebecca Cambreleng, CAMBRELENG & MARTON LLC, 3518 S Corbett Avenue, First Floor, Portland, OR 97239. Of Attorneys for Plaintiff.

Clarence M. Belnavis and Janelle W. Debes, FISHER & PHILLIPS LLP, 560 SW Tenth Avenue, Suite 450, Portland, OR 97205. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Kayla Bassett was employed by Truveta, Inc. ("Truveta"). Bassett sued Truveta in state court, and Truveta timely removed. Bassett has since filed two amended complaints, with her Second Amended Complaint ("SAC") being the currently operative complaint. Bassett alleges claims for disability discrimination under Oregon law and the Americans with Disabilities Act ("ADA"), medical leave interference and retaliation under the federal Family and Medical Leave Act ("FMLA"), and wrongful discharge. Truveta moves to dismiss the SAC under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Truveta argues that Bassett fails adequately to allege:

PAGE 1 – OPINION AND ORDER

(1) a qualifying disability; (2) causation; (3) that Truveta had notice of Bassett's disability or serious medical condition; (4) that Bassett was eligible to take medical leave; (5) a viable FMLA retaliation claim; or (6) a viable wrongful discharge claim. For the reasons discussed below, the Court grants in part and denies in part Truveta's motion.[1]

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The Court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

---

[1] Notwithstanding Truveta's request for oral argument, the Court does not believe that oral argument would assist in resolving the pending motion. *See* LR 7-1(d)(1).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

Bassett began employment with Truveta in November 2021, as a Director of Product Management. SAC ¶ 9. She alleges that she is a veteran and "has a mental disability that affects one or more major life activities including sleeping, eating, and engaging in physical activities." *Id.* ¶ 10; *see also id.* ¶ 17. She "disclosed this disability to Truveta in October 2022 through her supervisor Rachel Jiang who reported it to the Chief Operating Officer, Lisa Gurry." *Id.* ¶ 11. That same month, Bassett asked for time off for surgery, which her supervisor Jiang granted. *Id.* ¶ 12. Bassett took time off for her surgery from October 14 to October 31, 2022. *Id.* ¶ 14. She was told to use her paid time off and was not notified about the FMLA, so she returned to work before being fully recovered and while still experiencing health-related issues. *Id.* ¶¶ 13, 15, 18.

On December 2, 2022, Bassett was advised by a medical professional to take time off from work to "address her disability and to heal completely from the surgery." *Id.* ¶ 19. That same day Truveta announced the departure of Bassett's supervisor Jiang and Bassett subsequently had an individual meeting with Gurry in which she shared that the reason for terminating Jiang was poor performance and there would be no layoffs. *Id.* ¶¶ 20, 23. Gurry

further assured Bassett that "she did not need to worry about her position as she was a high performer and had gotten good reviews." *Id.* ¶ 24.

On December 5, 2022, Bassett met with her new supervisor, Michael Simonov, "disclosed her disability," and "disclosed the surgery she had a few months prior and that her doctor had encouraged her to take time off to finish her recovery and deal with the impact from the flare of her disability." *Id.* ¶ 26. Simonov agreed that Bassett could take time off, so Bassett put paid time off on the calendar from December 20, 2022, to January 3, 2023. *Id.* ¶ 27. Simonov did not inform Bassett about her rights relating to medical leave or engage in any interactive process relating to her disability or need for accommodation. *Id.* ¶¶ 28-29.

On December 7, 2022, Bassett attended a company-wide presentation in which Gurry showed a slide presentation that listed Bassett as a key stakeholder. *Id.* ¶ 30. That same day, Bassett, Gurry, and Simonov had a one-hour meeting at which Gurry stated that she was familiar with Bassett's work and did not need to discuss it but instead wanted to focus on Bassett's team. *Id.* ¶ 31. Bassett asked to reserve some time to discuss her work, and acknowledged that she had taken some time off because of medical issues but showcased the longer arc of her employment. *Id.* ¶¶ 31-32. Truveta terminated Bassett's employment on December 9, 2022, allegedly for poor performance despite Bassett allegedly never having a negative performance review, write-ups, discipline, or anyone mentioning Bassett's performance being a problem. *Id.* ¶¶ 33-35.

## DISCUSSION[2]

### A. Disability Claims

Bassett's first and second claims for relief are brought under Oregon disability discrimination law and the ADA, respectively. Oregon law provides that Oregon's disability

---

[2] The Court rejects as unpersuasive any argument not specifically addressed herein.

antidiscrimination law "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal Americans with Disabilities Act of 1990, as amended." Or. Rev. Stat. ("ORS") § 659A.139(1). Oregon law also provides that determining "whether an individual has a disability as provided in ORS 659A.104(1) shall be construed in favor of broad coverage of individuals under ORS 659A.103 to 659A.145, to the maximum extent permitted by the terms of ORS 659A.103 to 659A.145." *Id.* § 659A.139(2). Bassett brings claims for disability discrimination and failure to accommodate.

### 1. Discrimination

To state a prima facie case under the ADA for employment discrimination, Bassett must show "(1) that she is disabled within the meaning of the ADA; (2) that she is a qualified individual with a disability; and (3) that she was discriminated against because of her disability." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). The standards are similar under Oregon law. *See Tomlinson v. City of Portland*, 2024 WL 279036, at *7 (D. Or. Jan. 25, 2024) (explaining that to allege a prima facie case of disability discrimination under Oregon law a plaintiff must allege that "(1) she is a qualified individual with a disability; (2) she suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and her disability").

A disability is defined under the ADA as "a physical or mental impairment that substantially limits one or more major life activities; . . . a record of such an impairment; or . . . being regarded as having such an impairment." 42 U.S.C. §§ 12102(1)(A)-(C). The definition of a disability under Oregon law is substantially the same. ORS § 659A.104(1). "Major life activities" can include eating, sleeping, walking, standing, lifting, breathing, and more. 42 U.S.C. § 12102(2)(A); ORS § 659A.104(2).

Truveta argues that Bassett has not met the pleading standard to demonstrate that she is a qualified individual with a disability under the definition from the ORS or the ADA. Truveta contends that Bassett's allegation of disability is too broad and vague to support her claims, contending that her claims fail for reasons similar to those why the allegations failed in *Tomlinson* and *Garcia v. Durham & Bates Agencies, Inc.*, 2014 WL 3746521 (D. Or. July 29, 2014). Bassett analogizes her allegations to those found sufficient to state a claim in *Wessels v. Moore Excavation, Inc.*, 2014 WL 6750350 (D. Or. Dec. 1, 2014), and *Stewart v. Centene Corp.*, 2020 WL 496503 (D. Or. Jan. 30, 2020).

"To survive a motion to dismiss, [Bassett] must allege well-pleaded facts demonstrating the existence of a 'physical or mental impairment that substantially limits one or more major life activities.'" *Tomlinson*, 2024 WL 279036, at *7 (quoting ORS § 659A.104(1)(a)). In *Tomlinson*, the Court rejected as a legal conclusion the allegation that the plaintiff was "a 'disabled person' as defined at ORS § 659A.104(1)" and rejected as insufficient the allegation that the plaintiff, during a period of 1.5 weeks when she was sick, "had not been able to get enough sleep." *Id.* (quotation marks omitted). Similarly, in *Garcia*, the Court rejected as insufficient an allegation the plaintiff "has a disability and informed [the defendant] about her conditions in August 2012." *Garcia*, 2014 WL 3746521, at *3 (quotation marks omitted).

Bassett alleges that she "has a mental disability that affects one or more major life activities including sleeping, eating, and engaging in physical activities." SAC ¶ 10. In *Wessels*, U.S. District Judge Marco Hernandez found that the plaintiff's allegation that he had a "serious medical condition which substantially limits him in one or more major life activities including but not limited to walking and standing," was distinguishable from the plaintiff's bare allegations in *Garcia*. *Wessels*, 2014 WL 6750350, at *4. The court in *Wessels* emphasized that the "nature

PAGE 6 – OPINION AND ORDER

of [the plaintiff's] alleged limitations in walking and standing provide some information as to the nature of the impairment." *Id.* Like the plaintiff in *Wessels*, Bassett does more than merely asserting that she has a disability about which she notified her employers. Bassett specifically alleges that her condition is mental and that it substantially limits specifically identified major life activities. *See also Stewart*, 2020 WL 496503, at *2 (finding that the plaintiff's identification of her disability as physical, unlike the plaintiff in *Garcia* who did not identify whether her disability was mental or physical, supported finding the claim well-pleaded).

Truveta argues that both *Stewart* and *Wessels* are distinguishable because in those cases the plaintiffs pled a record of disability that the employer perceived. This included the plaintiff in *Stewart* being granted an accommodation for more bathroom breaks from human resources and requesting leave to attend disability-related doctor's appointments, 2020 WL 496503, at *2, and the plaintiff in *Wessels* similarly requesting time off to treat his disability and arranging a late arrival with his employer to accommodate a medical treatment, 2014 WL 6750350, at *4. The findings regarding whether the plaintiffs in *Stewart* and *Wessels* adequately alleged a disability, however, were separate from the discussion of this evidence, which related to whether the respective employers had a record of the plaintiffs' disability or regarded the plaintiffs as disabled. *See, e.g.*, *Stewart*, 2020 WL 496503, at *2 (explaining, after concluding that *Wessels* was more persuasive than *Garcia* on the issue of actual disability, that even if *Garcia* were more persuasive on that issue, the motion to dismiss would fail because the plaintiff "separately" alleged a record of disability and perceived disability); *Wessels*, 2014 WL 6750350, at *4 (after concluding that the plaintiff sufficiently alleged "actual disability" based only on the allegations in the complaint relating to the disability, continuing to analyze whether the plaintiff also alleged "a record of disability or a perceived disability").

PAGE 7 – OPINION AND ORDER

Additionally, Bassett makes similar allegations of knowledge by her employer. She alleges that she disclosed her disability to her supervisor in October 2022, and asked for time off for surgery that same month, which was granted by her supervisor. Later, in December 2022, Bassett alleges that she met with her new supervisor and disclosed her surgery and asked for time off to finish her recovery and "deal with the impact from the flare of her disability." Her supervisor agreed that she could take the time off. Bassett, like the plaintiffs in *Stewart* and *Wessels*, alleges actual disability, a record of disability, and perceived (or regarded as) disability. *See* SAC ¶ 42 ("Plaintiff is protected by statute as an individual with a disability due to her actual disability, because of her record of disability, and because defendant regarded her as disabled."); *id.* ¶ 49 ("Defendant and its agents discriminated against Plaintiff in the terms and conditions of her employment by terminating Plaintiff's employment in substantial motivating part due to her disability, her record of a disability, or because it regarded her as a disabled person.").

Truveta additionally argues that Bassett only alleges a transient condition. Bassett alleges facts relating to her surgery and associated time off, which relate to her medical leave claim. That was a transient condition. But Bassett's surgery is not her alleged disability; her alleged disability is based on her mental health or defect. Bassett plausibly alleges that she is a veteran with a mental disability that significantly affects major life activities. At this stage of the litigation, that is sufficient.

Finally, Truveta argues that Bassett fails to allege causation. Bassett alleges that she was terminated four days after requesting time off in part to address her disability, purportedly for performance issues. She also alleges that she never had any negative performance feedback, including during a one-hour meeting with her supervisors two days before her termination. The close temporal proximity alone plausibly alleges causation at this stage of the litigation. *See, e.g.*,

*Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003) (holding that a "very close" temporal proximity "between an employer's knowledge of protected activity and an adverse employment action" is sufficient circumstantial evidence of causation (quotation marks omitted)); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (similar); *Shultz v. Wells Fargo Bank, Nat'l Ass'n*, 970 F. Supp. 2d 1039, 1055 (D. Or. 2013) (similar); *Meyer v. State ex rel. Or. Lottery*, 292 Or. App. 647, 683 (2018) (holding that a "gap of one to two months between the claimed protected activity and the subsequent adverse action . . . is sufficient to raise an issue of fact on causation"); *cf. Magee v. Trader Joe's Co.*, 2020 WL 9550008, at *11 (D. Or. Sept. 1, 2020) (focusing on a three-week temporal proximity between an employee's accommodation request and the imposition of administrative leave, explaining that "[a] reasonable employee being immediately placed on unpaid leave for a period of three weeks after seeking accommodations could be dissuaded from seeking accommodations"), *report and recommendation adopted in relevant part*, 2021 WL 1550336(D. Or. Apr. 20, 2021). Bassett's causation allegation is further supported by her alleged positive work history. *See Adams v. Walmart, Inc.*, 2021 WL 2744647, at *5 (D. Or. Mar. 29, 2021) (finding allegations that the plaintiff was an employee in good standing with positive performance reviews supported causation), *report and recommendation adopted*, 2021 WL 3939891 (D. Or. Sept. 2, 2021); *Kotewa v. Living Indep. Network Corp.*, 2007 WL 433544, at *10 (D. Idaho Feb.2, 2007) (finding, in the pretext context at summary judgment, that temporal proximity combined with a recent positive performance review was enough to show the defendant's claim of the plaintiff's poor performance was pretext). The Court thus denies Truveta's motion as to Bassett's disability discrimination claims.

### 2. Failure to Accommodate

"To establish a *prima facie* case for failure to accommodate, a plaintiff must show: (1) she is a qualified individual; (2) the defendant received adequate notice of the plaintiff's desire for a reasonable accommodation; and (3) a reasonable accommodation was available that would have enabled the plaintiff to perform the essential functions of her job." *Hanson v. Oregon*, 2024 WL 1328408, at *7 (D. Or. Mar. 28, 2024) (citing *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095, 1099 (9th Cir. 2018)). Although "there exists no stand-alone claim for failing to engage in the interactive process," *Snapp*, 889 F.3d at 1095, "an employer has a mandatory obligation to engage in an interactive process with employees in order to identify and implement appropriate reasonable accommodations." *Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1134 (9th Cir. 2020) (quotation marks omitted).

Bassett alleges that she was qualified to perform her job with the reasonable accommodation of the time off she requested in December 2022. Time off may be a reasonable accommodation under the ADA. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135-36 (9th Cir. 2001) (citing 29 C.F.R. § 1630.2(o)).Although Simonov granted Bassett's request, Truveta terminated Bassett's employment four days later, and 11 days before her time off was scheduled to begin.

Truveta argues that because Simonov granted the request, Bassett fails to state a claim. The Court rejects this contention. Simonov may have told Bassett that her request was granted, but it is a plausible inference, based on the allegations in the SAC that Bassett had never received a negative performance review and had a meeting with her supervisors two days before she was terminated and did not receive any negative feedback, that her termination was related to her request for time off. Granting a request for an accommodation and then terminating an employee for that accommodation is not participating in the process or granting the request in good faith.

PAGE 10 – OPINION AND ORDER

Truveta also argues that Bassett fails to allege that she notified Truveta about her disability. Bassett, however, alleges that she told Jiang, who told Gurry, and that Bassett told Simonov. That is sufficient at this stage of the litigation, accepting the alleged facts as true and construing them in the light most favorable to Bassett. Regarding failure to engage in the interactive process, the only allegation by Bassett is that Truveta did not discuss with her whether there may be an accommodation *other* than time off that would enable her to perform the functions of her job. But it is Bassett who "has the burden of showing the existence of a reasonable accommodation that would have enabled [her] to perform the essential functions of an available job." *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006). Bassett has sufficiently alleged that with respect to the requested time off but not with respect to some other unknown reasonable accommodation that Truveta should have discussed with her as part of the interactive process. Thus, the Court grants this aspect of Truveta's motion.

## B. FMLA

### 1. Standards

Under 29 U.S.C. § 2612(a), eligible employees are entitled to 12 weeks' leave if they have worked for an employer for at least 12 months and worked for at least 1,250 hours during the previous 12 months. *See* 29 U.S.C. § 2611(2)(A) (defining eligible employee). An eligible employee may take FMLA leave for several enumerated reasons, including when a "serious health condition . . . makes the employee unable to perform the functions of the position of [the] employee." *Id.* § 2612(a)(1)(D). FMLA creates "two interrelated, substantive employee rights": first, the employee's "right to use a certain amount of leave for protected reasons," and second, the "right to return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). FMLA makes it unlawful for any

covered employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" an eligible employee's right to protected FMLA leave. 29 U.S.C. § 2615(a)(1).

The Ninth Circuit has recognized two theories for a violation of § 2612(a): the "interference" or "entitlement" theory, and the "retaliation" or "discrimination" theory. *Olson v. United States ex rel. Dep't of Energy*, 980 F.3d 1334, 1338 (9th Cir. 2020). The two theories are often confused because of the "unfortunate intermixing of the two different statutory concepts" in the governing FMLA provisions. *Bachelder*, 259 F.3d at 1124; *see also Hanson v. Or., Legis. Assembly*, 2023 WL 22196, at *21 (D. Or. Jan. 3, 2023) (clarifying which FMLA provisions govern which theories of recovery). The Ninth Circuit has clarified that a claim that an employer has "visit[ed] negative consequences" on an employee for using FMLA leave is an "interference" claim under § 2615(a)(1). *Bachelder,* 259 F.3d at 1124; *see also Ramirez v. Wynn L.V., LLC*, 2022 WL 3715751, at *6 (D. Nev. Aug. 29, 2022) ("Though Ramirez's complaint uses the terms 'retaliation' and 'discrimination,' her claim is properly construed as an FMLA interference claim because she alleges Wynn terminated her for taking FMLA leave."). "Interference" may also include interfering with an employee's right to take FMLA leave by terminating that employee, thereby making it impossible for the employee to take leave to which she would have been entitled had she remained employed. *See, e.g.*, *Tomlinson*, 2024 WL 279036, at *9; *Fulfer v. WinCo Holdings, Inc*., 2019 WL 5536326, at *33 (E.D. Cal. Oct. 25, 2019).

"The failure to notify an employee of her rights under the FMLA can constitute interference if it affects the employee's rights under FMLA." *Liston v. Nevada ex rel. its Dep't of Bus. & Indus.*, 311 F. App'x 1000, 1002 (9th Cir. 2009) (citing *Xin Liu v. Amway*, 347 F.3d 1125, 1134-35 (9th Cir. 2003). "Inadequate notice amounts to interference if is causes an

PAGE 12 – OPINION AND ORDER

employee to unwittingly forfeit the protection of the FMLA." *Munger v. Cascade Steel Rolling Mills, Inc.* 544 F. Supp. 3d 1078, 1087 (D. Or. 2021) (quotation marks omitted). A "retaliation" or "discrimination" claim under the FMLA, on the other hand, requires action by the employer in response to (1) the employee having opposed a practice made unlawful under the FMLA subchapter or (2) instituting or participating in FMLA proceedings. *Bachelder*, 259 F.3d at 1124 (citing 29 U.S.C. §§ 2615(a)(2) and (b)). Thus, Bassett's claim is one for interference, not retaliation. The Court grants Truveta's motion as against Bassett's claim for FMLA retaliation.

**2. Analysis**

Truveta argues that Bassett was ineligible for FMLA leave when she asked for time off for her October surgery. Bassett, however, bases her FMLA claim solely on her December 5, 2022 request for time off. *See* SAC ¶¶ 54-55.

Truveta also argues that Bassett does not specifically allege FMLA eligibility for the December 5, 2022 request. Bassett alleges that she has worked the necessary hours by alleging in paragraph 52 that she meets FMLA eligibility as required by 29 U.S.C. § 2611(2)(A), which establishes the 12 month and 1250-hour requirement. Additionally, Bassett alleges that she worked as a Director of Product Management since November 29, 2021, so she had worked for more than 12 months. To meet the 1250-hour requirement for the previous 12 months would mean working 24.04 hours per week. It is a plausible inference from Bassett's allegations that she work at least 24.04 hours per week as a high level manager.

Truveta next argues that Bassett fails to allege a serious medical condition that required FMLA leave. Bassett, however, alleges that she had complications from her surgery and that she had a mental disability, both of which required that she take time off in December 2022. Truveta argues that Bassett's condition could not have been serious because she asked for time off on December 5, 2022 and did not schedule it until December 20, 2022. The implications from this

PAGE 13 – OPINION AND ORDER

delay raise issues of fact. There are many reasons an employee might power through a serious medical issue and delay taking leave, such as for the good of the employer, to accrue more leave (particularly given that Bassett alleges that she was not aware of FMLA and that she recently had taken two weeks of paid time off), out of fear of retaliation for taking leave without notice, and so forth. This likely is an issue for the jury, but at best is something that Truveta may try to show is undisputed at summary judgment. Viewing the facts in the light most favorable to Bassett at this stage, Bassett's failure immediately to take leave does not detract from her alleged serious medical condition.

Truveta also argues that Bassett fails to show causation. As discussed above, Bassett alleges both close temporal proximity of four days between her requested time off and her termination of employment, and that she did not have any negative performance feedback even as soon as two days before her firing. Truveta argues that temporal proximity alone is insufficient. But Truveta cites *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231 (11th Cir. 2010). The court in *Krutzig* held *at summary judgment* that "[t]emporal proximity alone" was "not sufficient to establish a causal connection when there is unrebutted evidence that the decision maker was not aware of the protected activity." *Id.* at 1235. This holding, even if it applied in the Ninth Circuit, would not be appropriate at a motion to dismiss. There is no "unrebutted evidence" that the decision maker was unaware of the protected activity. Additionally, in this circuit, courts routinely find close temporal proximity alone is sufficient at the motion to dismiss stage to allege causation. *See, e.g.*, *Vasquez v. Piper Sandler & Co.*, 2024 WL 4364147, at *12 (D. Ariz. Sept. 30, 2024) ("Vasquez claims he has shown temporal proximity between the protected action and his termination, which provides causation. . . . [T]he Court will not preclude this claim on a motion to dismiss. This issue may be raised again on summary judgment."); *Borenstein v. The*

*Animal Found.*, 2024 WL 2396494, at *6 (D. Nev. May 23, 2024) ("The alleged [ADA] retaliation here meets that temporal proximity requirement: it occurred well within the three-month period (from June 2, 2019 to June 25, 2019). Accordingly, Borenstein sets forth sufficient allegations to establish both the causal and temporal link." (citations omitted)); *Tomlinson*, 2024 WL 279036, at *10 (concluding that a proximity of less than two weeks between the protected activity and the adverse employment action sufficed to allege FMLA and Oregon Family Leave Act ("OFLA") claims).

Drawing all inferences in favor of Bassett, she sufficiently alleges a claim for FMLA interference. Bassett alleges that Truveta did not inform her of her rights to protected leave and that, as of the day before Bassett requested time off for her serious health conditions, Truveta had no plans to terminate Bassett. Within four days of her request for time off, however, Truveta terminated Bassett, purportedly for poor performance, preventing her from using any protected leave that might have been available to her.

## C. Wrongful Discharge

In her final claim for relief, Bassett alleges common law wrongful discharge on the grounds that she "was discharged from her employment in retaliation for her exercise of the right to make use of protected medical leave." "Common law wrongful discharge is an interstitial tort: The tort may only be invoked when another claim does not provide a plaintiff with an adequate remedy." *Walker v. State ex rel Or. Travel Info. Council*, 367 Or. 761, 778 (2021).

The "statutory remedies under FMLA and OFLA do not preempt a wrongful-discharge claim under Oregon law because they do not authorize an award of general or noneconomic damages for emotional distress." *Stillwell v. Old Dominion Freight Line, Inc.*, 2021 WL 3056375, at *12 (D. Or. July 20, 2021 (quoting *Pacosa v. Kaiser Found. Health Plan of the Nw.*, 2011 WL 208205, at *14 (D. Or. Jan. 21, 2011)). Truveta argues that because Bassett fails

PAGE 15 – OPINION AND ORDER

to state an FMLA claim, she cannot state a wrongful discharge claim based on this conduct. The Court however, has rejected Truveta's motion to dismiss Bassett's FMLA interference claim.

Bassett's disability claims, however, do provide adequate statutory remedies. *See* ORS § 659A.885(3). But at this stage of the litigation, Bassett is entitled to plead her claims in the alternative. Truveta argues that Bassett may not plead in the alternative, but cites opinions at summary judgment terminating wrongful discharge claims. Thus, Bassett's wrongful discharge claim survives at this stage of the litigation.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendant Truveta's Motion to Dismiss, ECF 27. The Court dismisses Plaintiff Bassett's claim for FMLA retaliation and for failure to accommodate under the ADA and Oregon law based on failure to engage in the interactive process. The Court denies Truveta's motion in all other respects.

**IT IS SO ORDERED**.

DATED this 25th day of August, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge